IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATCHITOCHES PARISH HOSPITAL SERVICE DISTRICT, on behalf of itself and all others similarly situated <br><br> TYCO INTERNATIONAL, LTD.; TYCO INTERNATIONAL (U.S.), INC.; TYCO HEALTHCARE GROUP, LP; THE KENDALL HEALTHCARE PRODUCTS COMPANY | § § § § § § § § § § § § | CASE NUMBER: MISC <br><br> (U.S.D.C. D. Mass. 05-12024 PBS) |

## NON-PARTY DANIELS SHARSPMART'S MOTION TO QUASH SUBPOENA AND, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26 and 45, Daniels Sharpsmart Inc. ("Daniels"), a non-party to the above entitled and numbered cause, moves this Court for an Order to Quash the third-party subpoena served by Tyco International, Ltd., ("Tyco"). Supporting this Motion, Daniels respectfully shows this Honorable Court as follows:

I.

### BACKGROUND

A.  The Daniels Lawsuit

Tyco's subpoena in the instant case is simply an effort to circumvent the discovery process in another case in which Daniels is plaintiff and Tyco is a defendant. In the Eastern District of Texas on August 31, 2005, Daniels filed an antitrust complaint (the "Daniels Lawsuit") against Tyco and other defendants. In the Daniels Lawsuit, plaintiff Daniels alleges that the defendants conspired to lessen or eliminate competition in the relevant markets for Sharps Container Systems.

On June 9, 2006, Daniels served Tyco with requests for production in the Daniels Lawsuit. Although Tyco filed written responses on August 4, 2006, Tyco still has not produced any documents in the Daniels Lawsuit.

On June 13, 2006, Tyco and the other defendants in the Daniels Lawsuit served Daniels with a joint request for production. Daniels filed its written Answers and Objections to Defendants Joint Requests for Production on August 11, 2006.

B. The Natchitoches Lawsuit

In the District of Massachusetts on October 5, 2005, Natchitoches Hospital ("Natchitoches") filed suit (on behalf of itself and others similarly situated) against Tyco. In this lawsuit (the "Natchitoches Lawsuit"), Plaintiffs allege that anti-competitive behavior on the part of Tyco resulted in the overcharging of various Sharps Containers.

In the course of the Natchitoches Lawsuit, Tyco has served non-party Daniels with a subpoena issued from this Court on August 9, 2006. Tyco now demands that Daniels produce voluminous documents, most of which (if not all) were previously requested by Tyco in the Daniels Lawsuit. The subpoena and accompanying document request is attached here as Exhibit "A". The specified time and place for compliance is September 6, 2006 at Cooley Godward in Palo Alto, California.

Tyco, in the context of the Natchitoches Lawsuit, claims that the information sought from non-party Daniels is necessary now in order to resolve a class certification issue. Pursuant to an

order issued by the Court in the District of Massachusetts, the deadline for completion of discovery for the class certification issue in the Natchitoches Lawsuit is November 30, 2006.

Counsel for Daniels contacted Tyco's counsel and requested that the documents sought by Tyco be provided in the normal course of, and pursuant to, the routine and regulated discovery in the Daniels Lawsuit. Counsel for Tyco rejected this offer, but agreed that the deadline could be adjusted by a matter of weeks. Daniels now moves the Court to quash the subpoena.

## II.

## MOTION TO QUASH

Tyco's Subpoena and Requests for Production of Documents to non-party Daniels in the Natchitoches Lawsuit should be quashed. Assuming *arguendo* that the information requested from Daniels is relevant, this Court may quash the subpoena if (i) no need is shown, or (ii) compliance is unduly burdensome. *See, Mannington v. Mills, Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 529 (D. Del. 2002). Additionally, the Court must quash or modify a subpoena pursuant to Rule 45(c)(3)(A) under certain circumstances. Those circumstances exist in this case because (i) the subpoena fails to allow a reasonable time for compliance, (ii) subjects non-party Daniels to an undue burden, and (iii) requires production of the documents outside the judicial district. Finally, the Court may rely upon its inherent power to quash a subpoena when, as is the instant case, the subpoena attempts to circumvent the normal discovery process.

A.  Subpoena Fails to Allow for a Reasonable Time for Compliance.

Rule 45(c)(3)(A)(i) requires the Court to quash a subpoena when the subpoena fails to allow for a reasonable time for compliance. Such is the case here. Based upon the terms of the Request for Production of Documents appended to the subpoena, a responsive collection of

materials will consist of thousands of documents encompassing hundreds of thousands of pages. The expansive document requests, each generally beginning with the term "all documents," are defined in such a way that every conceivable memorialized item must be provided, including handwritten notes, drafts of documents, etc. The time frame for the requests is expansive as well, covering a period of almost seven years. To respond to this sprawling and extensive request, Tyco has granted Daniels less than a month to comply.[1] The time period allotted to Daniels is not only unreasonable, it is simply impracticable. Importantly, again note that Tyco hasn't produced documents pursuant to a similar request for production in the Daniels Lawsuit. Accordingly, this subpoena should be quashed.

      B.    <u>Subpoena Subjects Non-Party Daniels to an Undue Burden</u>.

In addition to failing to allow for a reasonable response time, this subpoena must be quashed because it imposes an undue burden on non-party Daniels. Undue burden is a relative term and the status of the party subpoenaed figures largely in determining the magnitude of the burden. As a non-party to this lawsuit, Daniels should be granted additional protection against the time and expense of complying with the subpoena. *See Katz v. Batavia Mar. & Sporting Sup., Inc.*, 984 F.2d 422, 424 (Fed. Circ. 1993); *See also Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.1988), *aff'd*, 870 F.2d 642, 10 USPQ2d 1247 (Fed.Cir.1989) (nonparty status a significant factor in determining whether discovery is unduly burdensome). Thus at the outset, the non-party status of Daniels should be considered when analyzing the burden imposed.

---

[1] Tyco's counsel has previously engaged in this time consuming scope of document production with Daniels' counsel. Parties typically file written responses and then agree on a date well into the future for mutual document exchange. As an example of this proposition, in the Daniels Lawsuit Tyco has yet to offer a date to provide its documents, even though Tyco was served with those requests several months ago.

Similarly, the fact that this subpoena is issued in the shadow of another lawsuit is a factor the Court should consider when determining the nature of the burden imposed. Though a non-party to the instant suit, Daniels is actively involved in a fierce struggle of its own against Tyco. This subpoena appears to be a thinly-veiled effort to circumvent the discovery process in the Daniels Lawsuit. At a minimum, however, the Court should consider that the review of the expansive collection of documents required by this subpoena demands a much closer scrutiny for attorney-work product and other privileges that might impact the Daniels Lawsuit. Thus the presence of the initial lawsuit against Tyco adds to the already excessive burden of this subpoena and its attendant Requests for Production of Documents, a set of circumstances of which Tyco is keenly aware.

The nature of this burden is evidenced in other ways as well. In addition to the unreasonable time constraints, note that Tyco has unreasonably requested that Daniels review and produce all responsive documents at its own expense thus adding to the burden imposed. The cost of collecting, reviewing, and reproducing the documents requested is likely to be several thousand dollars and thus significant. *See Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D.Tex.1998) ($9,000 estimate considered significant). The shortened time-frame and significant cost involved places an undue burden on Daniels as a non-party to the Natchitoches Lawsuit. Fortunately, Rule 45(c)2(b) enables the court to protect non-parties from "significant" expense and thus spare Daniels of the excessive burden imposed by this subpoena.

That the subpoena imposes an undue burden is clear not only from the imposition of costs to Daniels, but also from the very nature of the request. On its face, the subpoena requests are vague and overly broad. The various items in the Request for Production of Documents invariably begin with "all documents" (with "documents" expansively defined) or "all

documents and communications" (with "communications also expansively defined). As another example, the requests demand various agreements, prices, bids, etc. Rather than require Daniels to produce the actual agreement, price, or bid, Tyco demands that all "proposed" or "projected" items be produced as well. Similarly, the demands of Tyco fail to identify specific, identifiable records from which Daniels can retrieve necessary documents. Rather, the subpoena requires the creation of essentially new systems of records in order to satisfy the demand. Demand # 5 is illustrative. In this demand, Daniels is requested to produce "All documents and communications referring to competition between reusable Sharps Containers and disposable Sharps Containers in the United States." Daniels has no single set of records that contain every reference to competition between reusable and disposable Sharps Containers. Rather, Daniels employees will have to painstakingly search a host of files looking for "every reference." This request, and the others that accompany it, make it clear to the court that the burden imposed upon Daniels is an undue one. *See Williams v. City of Dallas*, 178 F.R.D. 103, 109-110, 115-116 (N.D. Tex. 1998)(subpoena requiring production of "any and all" documents was overbroad on its face since it lacked specific documentary descriptions and reasonable restrictions on time.). *See also Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 544 (S.D.N.Y. 1985) (documents must be identified and have basis for concluding they exist.)

Tyco could have chosen to narrowly tailor their request to Daniels as one would expect of any subpoena to a non-party. They did not. Instead this subpoena has thrown an expansive net over a sea of potential documents. In doing so, the subpoena has unfairly and unreasonably

imposed an undue burden on non-party Daniels. Further, Tyco has provided no indication as to how and why Daniels' data is relevant to the class certification issues in the Natchitoches Lawsuit. As a result, the court can clearly reference Rule 45(c)(3)(A) and quash this subpoena.

C. Subpoena seeks privileged or protected information

In addition to the failure to provide a reasonable time for compliance and the imposition of an undue burden, the Court should quash this subpoena because it seeks privileged or protected material. Specifically, the subpoena seeks confidential documents relating to Daniels' - a non-party to the Natchitoches Lawsuit - costs, expenses, profit margins, business agreements, and sales. This information, once obtained, would be disclosed to a number of third parties, including several competitors. Requests 8 and 9 are representative of such requests:

> 8. "All documents and communications referring to *any proposed* or *executed contract or agreement* regarding Sharps Containers between you and *any potential* or *actual purchaser* of your Sharps Containers in the United States."
>
> 9. Documents and communications sufficient to show your actual and projected *prices, profit margins, gross margins, revenues, losses* and *all costs* for your Sharps Containers on a quarterly basis.

That these requests seek the essence of Daniels' competitive information, and thus confidential information, could not be made clearer than by Request 10:

> 10. All documents and communications referring to Daniels' proposed or actual *pricing strategies, marketing plans and strategies*, and *competitive strategies* regarding Sharps Containers.

By seeking Daniels' corporate pricing strategies, marketing plans, and "competitive strategies", Tyco seeks information which inherently place Daniels at a competitive disadvantage

in the marketplace (note that Tyco is one of Daniels chief competitors, if not *the* chief competitor). The subpoena, then, requires the disclosure of protected trade information which is not publicly available. This information, made public, would work to the economic harm of Daniels by placing Daniels at a competitive disadvantage. *See R&D. Bus. Sys. V. Xerox Corp.*, 152 F.R.D. 195, 196-97 (D. Colo. 1993) (subpoena quashed which sought protected trade secrets from non-party in the form of parts and supplies sources, research and development efforts, market strategy, and customer lists). Accordingly, Rule 45(c)(3)(B) requires the Court to quash the subpoena.

D.   Production To Occur Outside Judicial District

Rule 45(a)(2)(C) requires production or inspection to be made in the district of the court from which the subpoena is issued. In contravention of this rule, the subpoena has demanded that the documents at issue be produced for inspection in California. *See, James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15 (D.D.C. 2002) (quashing subpoena compelling nonparty to produce documents for inspection outside of judicial district of court). Under Rule 45(a)(2)(C), the Court is required to quash this subpoena.

E.   Discretionary Grounds Upon Which the Court May Quash

In addition to the above, the Court may also exercise its discretion to quash the subpoena. *See, Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1328 (Fed.Cir.1990) (non-party may invoke court's inherent power to quash subpoena). In the instant case, Tyco has not established why the materials sought are necessary for the class certification issue in the Natchitoches

Lawsuit. Additionally, Tyco has not established why the materials, if relevant, must be obtained by September 6, 2006 when the discovery deadline imposed by the Massachusetts court is November 30, 2006. Perhaps more importantly, the Court may readily recognize that the efforts of Tyco in the Natchitoches Lawsuit are a circumvention of the discovery process in the Daniels Lawsuit. *See Buhrmaster v. Overnite Transportation Company*, 61 F.3d 461 (6th Cir.1995) (affirming district court's decision to quash subpoena of material that could have been produced through normal discovery where plaintiff used subpoena to circumvent discovery deadline). To avoid this circumvention, the Court should quash the subpoena.

### III.

### Protective Order

In the event the Court does not quash or modify the subpoena, then in the alternative Daniels requests a protective order to protect the disclosure of its confidential and proprietary information in the form of trade secrets and confidential commercial information. Although a Confidentiality Order may exist in the Natchitoches Lawsuit, it may not provide adequate protection to a non-party such as Daniels.

As discussed and demonstrated under Section C above, the subpoena seeks to obtain information which, if released without condition, would place Daniels at a "competitive disadvantage." Rule 26(c) recognizes that a "competitive disadvantage" is a basis upon which a court may issue a protective order. *See Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D. Pa. 1994)*. The risk of such disclosure constitutes the "good cause" necessary for application of the protective order. *See Landry v. Air Line Pilots Ass'n*, 901 F. 2d 404, 435 (5th Cir. 1990).

## IV.

## Conclusion

For the reasons stated above, non-party Daniels respectfully moves this Court to issue an Order:

1. Quashing the subpoena issued by Tyco, or

2. Protecting from disclosure all documents requested which involve trade secrets or confidential commercial information of Daniels, and

3. Granting such other and further relief to which Daniels may be entitled.

Respectfully submitted,

By: _____
Jeffrey S. Goddess (DSBA No. 630)
Jessica Zeldin (DSBA No. 3558)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899-1070
(302) 656-4433
jgoddess@rmgglaw.com
*Attorneys for Non-Party Daniels Sharpsmart Inc.*

OF COUNSEL:

THE LANIER LAW FIRM, P.C.
W. Mark Lanier
State Bar No. 11934600
Michael R. Holley
State Bar No. 24012845
P.O. Box 691448
6810 FM 1960 West (77069)
Houston, Texas 77269-1448
Telephone: (713) 659-5200

## CERTIFICATE OF CONFERENCE

I certify that on August 20, 2006 I conferred with Margaret Branick-Abilla, counsel for Tyco in this cause and proponent of the subpoena at issue. I initially offered to provide the majority of the requested documents in the course of normal discovery in the Daniels lawsuit. Ms. Branick-Abilla declined this offer. Ms. Branick-Abilla did inform me that the deadline for response might be moved back a "few weeks" and that she would be willing to accept a "rolling" production of documents. This proposed course of action by Ms. Branick-Abilla did not resolve all of the concerns on the part of Daniels. On August 31, 2006 a formal letter stating the objections made by Daniels to the subpoena was faxed to Ms. Branick-Abilla. On September 1, 2006 a letter indicating our intent to file the motion to quash was also faxed to Ms. Branick-Abilla. Ms. Branick-Abilla very courteously responded on the same day to advise me that she opposed the motion.

_____
Michael R. Holley

# EXHIBIT A

Case 1:06-mc-00169-JJF   Document 1   Filed 09/06/2006   Page 12 of 18

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court
## DISTRICT OF DELAWARE

NATCHITOCHES PARISH HOSPITAL
SERVICE DISTRICT, on behalf of itself and
all others similarly situated,

v.

TYCO INTERNATIONAL, LTD.; TYCO
INTERNATIONAL (U.S.), INC.; TYCO
HEALTHCARE GROUP, LP; THE
KENDALL HEALTHCARE PRODUCTS
COMPANY

SUBPOENA IN A CIVIL CASE

CASE NUMBER:[1] MISC
(U.S.D.C. D. Mass. 05-12024 PBS)

**CALENDARED**

TO: Daniels Sharpsmart Inc.
c/o Corporation Service Company (Registered Agent)
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   **See Exhibit A attached hereto.**

| PLACE c/o Margaret Branick-Abilla, Cooley Godward LLP, Five Palo Alto Square, 3000 El Camino Real, Palo Alto, CA 94306 | DATE AND TIME September 6, 2006 |
| --- | --- |

☐ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) *Margaret Branick-Abilla*  Attorney for Defendants | Date 08/08/06 |
| --- | --- |

Issuing Officer's Name, Address, and Phone Number
Margaret Branick-Abilla, Esq., Cooley Godward LLP,
Five Palo Alto Square, 3000 El Camino Real,
Palo Alto, CA 94306
Telephone: 650-843-5000

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

[1] If action is pending in district other than district of issuance, state district under case number.

| PROOF OF SERVICE | | |
|---|---|---|
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

| DECLARATION OF SERVER |
|---|
| I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct. |
| Executed on<br><br>DATE<br><br>SIGNATURE OF SERVER<br><br>ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

### I. DEFINITIONS AND INSTRUCTIONS

1. As used herein, the terms "you", "your" and "Daniels" mean Daniels Sharpsmart Inc. and all of its past or present officers, directors, managers, employees, parent and subsidiary entities, affiliated entities, predecessors or successors in interest, agents, representatives, attorneys, consultants, or other persons or entities acting on their behalf or subject to their control.

2. As used herein, the term "Becton" means Becton Dickinson and Company, and all of its past or present officers, directors, managers, employees, agents, and affiliated entities.

3. As used herein, the term "Tyco Healthcare" means Tyco International (US) Inc. and Tyco Healthcare Group LP, and all of their past or present officers, directors, managers, employees, agents, and affiliated entities, including the Kendall division.

4. As used herein, the term "Stericycle" means Stericycle Inc., BioSystems, Scherer Healthcare and all of their past or present officers, directors, managers, employees, agents, and affiliated entities.

5. As used herein, the term "Sharps Container", whether singular or plural, means any container designed, marketed, supplied or sold for the disposal of medical sharps and instruments, including both reusable and disposable containers.

6. As used herein, the terms "referring to" and "regarding" shall be construed in their broadest sense to require information or documents that reflect, identify, describe, discuss, summarize, evidence, reference, comment on or concern in any way the subject matter of the request.

7. As used herein, the term "document" means any written, printed, typed, recorded, magnetic, punched, copied, graphic or other tangible thing in, upon, or from which information may be embodied, translated, conveyed, or stored (including, without limitation, correspondence, memoranda, notes, records, books, papers, telegrams, e-mails, telexes, dictation or other audio tapes, video tapes, computer tapes, computer discs, computer hard drives, computer printouts,

microfilm, microfiche, worksheets, diaries, calendars, photographs, charts, drawings, sketches and all other writings or drafts thereof) and includes but is not limited to the definitions in Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.

8. As used herein, the term "communication" shall be construed in its broadest sense to mean any transmission of information from one person or entity to another, by any means, including (without limitation) by personal meeting, letter, memorandum, note, telephone, facsimile, radio, telegraph, e-mail, teleconference, audio or videotape, and any other mode or means of transmission. means all inquires, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, advertisements, or other forms of information exchanged, whether oral, electronic, or written.

9. Unless otherwise specified, the relevant time period for the document requests is from January 1, 2000 to the present.

10. In the event privilege from discovery is claimed as a basis for objecting or not responding to any of the document requests, in whole or in part, identify the document and/or communication and describe the factual basis for the claim of privilege in sufficient detail so as to enable the Court to determine the validity of the claim

## II. REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All documents and communications referring to the market share of any manufacturer or supplier of Sharps Containers in the United States, including but not limited to Daniels, Becton, Stericycle, and Tyco Healthcare.

2. All documents and communications referring to the market power of any manufacturer or supplier of Sharps Containers in the United States, including but not limited to Daniels, Becton, Stericycle, and Tyco Healthcare.

3. All documents and communications referring to the price of Tyco Healthcare's Sharps Containers, including but not limited to any documents or communications that compare the price of Tyco Healthcare's Sharps Containers to the price of Sharps Containers manufactured or supplied by Daniels, Becton, Stericycle, or any other manufacturer or supplier.

4. All documents and communications referring to competition in the market for Sharps Containers between any manufacturers or suppliers, including but not limited to Daniels, Becton, Stericycle, and Tyco Healthcare.

5. All documents and communications referring to competition between reusable Sharps Containers and disposable Sharps Containers in the United States.

6. Documents and communications sufficient to show your monthly sales of Sharps Containers in the United States in units, dollars and product type.

7. All documents and communications referring to any proposed or executed contract or agreement between you and any potential or actual purchaser of your Sharps Containers in the United States.

8. All documents and communications referring to any proposed or executed contract or agreement regarding Sharps Containers between you and any group purchasing organization, including but not limited to bids, proposals, or applications for breakthrough or innovative technology status.

9. Documents and communications sufficient to show your actual and projected prices, profit margins, gross margins, revenues, losses and all costs (fixed and variable) for your Sharps Containers on a quarterly basis.

10. All documents and communications referring to Daniels' proposed or actual pricing strategies, marketing plans and strategies, and competitive strategies regarding Sharps Containers.

11. Documents and communications sufficient to show your actual and projected prices, profit margins, gross margins, revenues, losses and all costs (fixed and variable) for waste disposal or other services offered or provided for your Sharps Containers on a quarterly basis.

12. Documents and communications sufficient to show the allocation or breakdown of your actual or projected prices, profit margins, gross margins, revenues, losses and all costs (fixed and variable) between the Sharps Container component and any service component.

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, do hereby certify, that on September 6th, 2006 I caused two copies of the foregoing Motion to be served upon the below individual in the manner indicated:

**Via Electronic Mail
and First Class Mail**   Margaret I. Branick-Abilla, Esquire
Cooley Godward LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
(650) 843-5067
mbranickabilla@cooley.com

_____
JEFFREY S. GODDESS (Bar I.D. No. 630)
(302) 656-4433
jgoddess@rmgglaw.com

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NATCHITOCHES PARISH HOSPITAL SERVICE DISTRICT, on behalf of itself and all others similarly situated | §<br>§<br>§<br>§<br>§   CASE NUMBER: MISC<br>§<br>TYCO INTERNATIONAL, LTD.; TYCO   §   (U.S.D.C. D. Mass. 05-12024 PBS)<br>INTERNATIONAL (U.S.), INC.; TYCO   §<br>HEALTHCARE GROUP, LP; THE   §<br>KENDALL HEALTHCARE PRODUCTS   §<br>COMPANY   § |

## [PROPOSED] ORDER

Upon consideration of Non-Party Daniels Sharpsmart's Motion to Quash a Subpoena of this Court which was served upon it by Tyco International, Ltd., and Tyco's response thereto,

IT IS HEREBY ORDERED that the aforesaid motion is GRANTED and the subpoena is quashed.

Dated: _____

_____
United States District Judge